Cary B. Samowitz
*cary.samowitz@dlapiper.com*
**DLA PIPER US LLP**
1251 Avenue of the Americas
New York, New York 10020-1104
Tel. (212) 335-4500
Fax. (212) 335-4501
*Attorneys for Defendants*
*Joseph DelGreco & Company, Inc. and*
*Joseph DelGreco*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

EASTWEST INTERNATIONAL (TAIWAN)
ENTERPRISES, a corporation formed under
the laws of Taiwan (ROC); and VICTORIA
POINT CORPORATION, a corporation formed
under the laws of the British Virgin Islands,

        Plaintiffs,

  -against-

JOSEPH DELGRECO & COMPANY, INC., a
corporation formed under the laws of the State
of New York; and JOSEPH DELGRECO, an
individual,

        Defendants.

------------------------------------- X

Case No.: 08-CIV-6124 (DAB)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY ACTION
IN FAVOR OF ARBITRATION**

Defendants Joseph DelGreco & Company, Inc. and Joseph DelGreco respectfully submit this memorandum of law in support of their motion to stay this action in favor of arbitration pursuant to the parties' written agreement.

## PROCEDURAL BACKGROUND

The facts necessary to decide this motion are undisputed and are found in plaintiffs' own complaint and in the accompanying contractual agreements.[1]

Defendant Joseph DelGreco & Company, Inc. ("DelGreco & Co.") "designs and markets high-end outdoor furniture products . . . ." (Complaint ¶ 6) (Ex. 1).[2] Joseph DelGreco ("Mr. DelGreco") is the "President and majority owner" of DelGreco & Co. (Ex. 1 ¶ 7). Plaintiff Eastwest International (Taiwan) Enterprises ("Eastwest") is a manufacturer and distributor of outdoor furniture products. (Ex. 1 ¶ 4). Plaintiff Victoria Point Corporation "processes invoices for payment" and acts "as a limited agent of Eastwest on specified matters." (Ex. 1 ¶ 5).

Plaintiffs' claims arise upon and in respect of the Exclusive Production, Distribution, and License Agreement between Eastwest and DelGreco & Co., dated as of September 26, 2007 (the "Agreement"). (Ex. 2).

Under the Agreement, DelGreco & Co. granted a license to manufacture outdoor furniture and accessories under the DelGreco brand name, to distribute DelGreco-branded outdoor furniture and accessories to Eastwest and its affiliates for sale within the United States and Canada and to distribute and sell DelGreco-branded outdoor furniture and accessories

---

[1] The documents cited herein were attached to the plaintiffs' complaint. In considering a motion to dismiss, a district court may consider the "facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

[2] "Ex. _" refers to the Exhibits attached to the accompanying Declaration of Cary B. Samowitz

*(footnote continued to next page)*

outside the United and Canada. (Ex. 2 ¶¶ C, D, 3.1, 7, 8) In consideration, Eastwest provided DelGreco & Co. a loan in the amount of US$1,000,000 for DelGreco & Co.'s grant to Eastwest of the production, distribution and license rights. (Ex. 2 ¶ C). The loan is memorialized by a promissory note, dated the same date as the Agreement, issued by DelGreco & Co. in favor of Eastwest in the amount of US$1,000,000 (the "Promissory Note"). (Ex. 3). The same day, September 26, 2007, DelGreco & Co. and Eastwest also entered into a Security Agreement, which secured part of the loan embodied in the Promissory Note. (Ex. 4).

On July 3, 2008, Eastwest filed a complaint purporting to allege three causes of action: (1) conversion of certain furniture, (2) breach of the Agreement, and (3) foreclosure on the collateral securing the Promissory Note. (Ex. 1).

Eastwest's complaint, however, was improperly filed with this Court. Per the clear terms of the Agreement, the alleged dispute is subject to resolution only by binding arbitration. The Agreement states:

> If at any time during the term <u>any dispute, difference, or disagreement shall arise upon or in respect of this Agreement, or the meaning or construction hereof,</u> which dispute, difference, or disagreement cannot be resolved between the Parties, <u>every such dispute, difference, or disagreement shall be referred to binding arbitration</u> conducted in English and in any other language or manner necessary or convenient to permit accurate communication, unlettered comprehension, and meaningful participation by the Parties, by and before a single arbitrator to be agreed upon by the Parties or, if no single arbitrator can be agreed upon within a reasonable time after, by a panel of three (3) arbitrators selected in accordance with the rules of the American Arbitration Association, and such dispute, difference, or disagreement shall be resolved by arbitration in New York, New York, in accordance with the then-prevailing commercial rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

---

*(footnote continued from previous page)*
in support of defendants' motion to stay.

(Ex. 2 ¶ 15.10) (emphasis added). Each of the three causes alleged in the complaint arises directly out of the Agreement. Specifically, the First and Second Causes of Action allege direct violations of the terms of the Agreement, and the Third Cause of Action seeks foreclosure on the consideration underlying the Agreement.

## ARGUMENT

Plaintiffs' claims arise directly from the Agreement at issue. As noted above, the Agreement contains an arbitration provision which provides that "any dispute, difference, or disagreement [that] shall arise upon or in respect of this Agreement" be arbitrated. (Ex. 2 ¶ 15.10). Plaintiffs' claims must therefore be stayed in favor of arbitration.

### A. The FAA Mandates That All Arbitrable Claims Be Submitted to Arbitration

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "creates a 'body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Hartford Accident and Indem. Co. v. Swiss Reins. Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)). The FAA preempts State law on the subject of enforceability of arbitration clauses, even though the dispute itself may arise under State law. *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 630-31, 601 N.Y.S.2d 686, 689 (Ct. App. 1993), *cert denied*, 510 U.S. 993 (1993). Where, as here, there is an agreement to arbitrate, the FAA reflects a strong, well-established, and widely recognized federal policy in favor of arbitration. *Hartford Accident and Indem., supra*, 246 F.3d at 226; *accord Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"). Indeed, the

4

"primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989). The arbitration agreement at issue in this case clearly falls within the scope of the FAA. The FAA applies whenever there is an agreement to arbitrate contained in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 274, 277 (1995).

One of the main vehicles for the enforcement of arbitration agreements is Section 3 of the FAA. That section provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In other words, absent proof that the party seeking to invoke arbitration is "in default in proceeding with . . . arbitration" – which is not at issue here – a party is entitled to a stay under Section 3 if the court is satisfied that the issue in the pending action "is referable to arbitration under [the parties' agreement]."

B.   **The Arbitration Clause Plainly Covers Plaintiffs' Claims**

Here, the issues raised in plaintiffs' complaint are clearly referable to arbitration under the parties' written agreement. Whether an issue is to be decided by an arbitrator is a matter of the parties' contractual intent. *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-49 (1986). However, "[t]he court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the

coverage of the Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Memorial Hosp., supra*, 460 U.S. at 24). That body of law "'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 n.8 (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25). Indeed, as the United States Supreme Court has repeatedly made clear, doubts regarding arbitrability should be resolved in favor of arbitration "unless it may be said with <u>positive assurance</u> that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Technologies*, 475 U.S. at 650 (emphasis added) (citation omitted).

      The mandate in favor of arbitration applies with even greater force where the arbitration clause is broad. *See Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir.) (holding that a clause providing for arbitration of "any controversy or claim . . . arising out of or relating to" the agreement is a "classically broad" arbitration clause), *cert. denied*, 121 S.Ct. 2262 (2000); *AT&T Technologies, Inc., supra*, 475 U.S. at 650. Indeed, "[i]f the arbitration clause is broad, the Court 'must find that the parties bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration absent compelling proof to the contrary.'" *Cleveland Wrecking Co. v. Iron Workers Local Union 40*, 947 F. Supp. 745, 748 (S.D.N.Y. 1996) (*quoting Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2d Cir. 1982)), *aff'd*, 136 F.3d 884 (2d Cir. 1997).

      Applying these standards, there can be no doubt that plaintiffs' claims fall within the scope of the arbitration clause in the Agreement and, accordingly, that this action must be stayed

pending arbitration. The Agreement contains the broadly worded arbitration clause that "any dispute, difference, or disagreement [that] shall arise upon or in respect of this Agreement" be submitted to arbitration. (Ex. 2 ¶ 15.10) (emphasis added). Each of plaintiffs' claims – which allege common law claims arising directly from alleged violations of the Agreement – plainly fall within the scope of the arbitration clause. *See Mehler v. Terminix Int'l Co., supra,* 205 F.3d at 50 (stating that the court has not limited "relating to" arbitration clauses to covering disputes over actions "that constitute a breach of the terms of the contract at issue"); *see also H.S. Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 383-84 (11th Cir. 1996) (clause calling for arbitration of claims "arising hereunder" a contract includes non-contractual claims).

### C.     The Arbitration Clause Applies to All Disputes Alleged in the Complaint

To the extent defendants attempt to argue that some portion of their claims involve only the Promissory Note and/or the Security Agreement, those agreements too are subject to the arbitration clause. The Agreement, Promissory Note and Security Agreement were signed on the same day, between the same parties and with respect to the same transaction, and the Agreement specifically references the Promissory Note and Security Agreement. (Exs. 2, 3, 4). The Promissory Note and Security Agreement merely provide further detail as to the consideration being exchanged between the parties. (Exs. 3 & 4).

New York law is clear that where agreements are interrelated and signed at the same time, an arbitration clause in the primary transaction document applies to disputes arising from interrelated transaction documents. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (arbitration clause in charter agreement extends to claim under letters of indemnity); *Cohen v. Looking for Palladin, LLC*, Slip Copy, No. 07CV6359 (HB), 2008 WL 544597 at *2 (S.D.N.Y. Feb. 29, 2008) (arbitration clause in

operating extends to subscription agreement); *Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*, No. 03 Civ 1162 (WHP), 2003 WL 22024070 at *4-6 (S.D.N.Y. Aug. 28, 2003) (arbitration clause in partnership agreement encompasses all disputes before court); *Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC*, 386 F. Supp. 2d 421, 425 (S.D.N.Y. 2005) (Judge Batts) (quoting 22 N.Y. Jur. 2d Contracts § 258 ("In the absence of anything to indicate the contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eyes of the law, one instrument.")). Thus, per the terms of the arbitration clause, "<u>any</u> dispute, difference, or disagreement [that] <u>shall arise upon or in respect of</u> this Agreement" must be arbitrated. (Ex. 2 ¶ 15.10) (emphasis added). The claims alleged in plaintiffs' complaint must be stayed in favor of arbitration.[3]

### D. Defendants Are Entitled to a Stay of This Action Under Section 3 of the FAA

As demonstrated above, all of the issues raised in plaintiffs' complaint are referable to arbitration. Defendants are therefore entitled to a stay of this action in favor of arbitration. 9 U.S.C. § 3; *see Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 45 (2d Cir. 1993) ("where a court is satisfied that a dispute before it is arbitrable, it must stay proceedings and order the parties to proceed to arbitration"); *see also Looking for Palladin,*

---

[3] The arbitration clause equally applies to all parties named in the complaint. The Second Circuit held that a court has the "inherent ability" to enter a stay even when a party is not a signatory to an arbitration agreement because, "'[a] party ought not be able to avoid arbitration by suing a related party 'with which it has no arbitration agreement in the hope that the claim will be adjudicated first and have preclusive effect on the arbitration.'" *Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 318-19 (E.D.N.Y. 2001) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997)). Therefore, the stay in favor of arbitration also applies to plaintiff Victoria Point Corporation and defendant Joseph DelGreco because the claims "arise out of the same set of facts" and the plaintiffs' claims are primarily directed to the signatory defendant. 141 F. Supp. 2d at 319.

*LLC*, 2008 WL 544597 (action stayed where court held that arbitration clause in interrelated agreements governs and must be enforced).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court stay this action in favor of arbitration in accordance with the parties' agreement.

Dated: New York, New York
July 21, 2008

DLA PIPER US LLP

By: _/s/ Cary B. Samowitz_
Cary B. Samowitz
1251 Avenue of the Americas
New York, New York 10020-1104
Tel. (212) 335-4500
Fax. (212) 335-4501
*Attorneys for Defendants*

NEWY1\8262357

9