UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
EASTWEST INTERNATIONAL (TAIWAN)      :
ENTERPRISES, a corporation formed under the :    Case No.: 08 CIV 6124
laws of Taiwan (ROC); and VICTORIA POINT :
CORPORATION, a corporation formed under   :    **ECF Case**
the laws of the British Virgin Islands,             :
                                                    :
                         Plaintiffs,                :
                                                    :
            -against-                               :
                                                    :
JOSEPH DELGRECO & COMPANY, INC., a   :
corporation formed under the laws of the State  :
of New York; and JOSEPH DELGRECO, an   :
individual,                                         :
                                                    :
                         Defendants.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO STAY ACTION IN FAVOR OF ARBITRATION OR,
## IN THE ALTERNATIVE, PENDING ARBITRATION

SEYFARTH SHAW LLP
David M. Monachino (DM 1527)
Eddy Salcedo (ES 3391)
620 Eighth Avenue
New York, New York 10020
Tel: (212) 218-5500

 -and-

PERKINS COIE LLP
David Frazee (*admission pro hac vice pending*)
Jonmi N. Koo (*admission pro hac vice pending*)
101 Jefferson Drive
Menlo Park, California  94025-1114
Tel: (650) 838-4300

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS..........................................................................................2

I.    The Distribution Agreement And The Note, Security Agreement, and Personal Guarantee are Separate Transactions, Entered Into For Different Purposes ......................3

II.    The Distribution Agreement's Arbitration Clause Is Limited To That Specific "Agreement".............................................................................................................5

III.    The Four Agreements Each Contain Separate Remedies Provisions ...................................6

LEGAL STANDARD ...................................................................................................8

ARGUMENT.................................................................................................................9

I.    THE PARTIES ONLY AGREED TO ARBITRATE CLAIMS ARISING UNDER THE DISTRIBUTION AGREEMENT ...............................................................9

    A.    There is No Agreement to Arbitrate Any Claims Other Than Ones Arising Under the Distribution Agreement ..........................................................9

    B.    The Fact that the Distribution Agreement, Promissory Note, Security Agreement, and Personal Guarantee Were Signed On the Same Day Does Not Render Them One Contract..........................................................10

    C.    Defendants' Position is Inapposite to the Very Case Law They Cite ...................12

II.    THE ARBITRATION PROVISION IN THE DISTRIBUTION AGREEMENT DOES NOT ENCOMPASS THE CLAIMS RAISED IN THE AMENDED COMPLAINT.........................................................................................................14

    A.    Plaintiffs' Claim for Conversion Falls Outside of the Scope of the Distribution Agreement Because It Deals Strictly With Ownership of Property .........................................................................................................15

    B.    The Claims for Collection of the Loan and for Enforcement of the Note and Security Agreement Are Not Claims That "Arise Upon or In Respect of" the Distribution Agreement.........................................................................16

    C.    The Claim for Guaranty Falls Outside of the Scope of the Distribution Agreement ...........................................................................................................16

D.    The Cause of Action for Complaint on Account Is Also Completely
      Unrelated to the Distribution Agreement ............................................................. 17

E.    Defendants' Alleged Fear of Concurrent Actions and Inconsistent Results
      Is A Specious and Misleading Argument .............................................................. 17

CONCLUSION ................................................................................................................................ 19

## PRELIMINARY STATEMENT

Plaintiffs, Eastwest International (Taiwan) Enterprises ("Eastwest") and Victoria Point Corporation ("Victoria Point") (collectively, "Plaintiffs"), respectfully submit this memorandum of law in opposition to the motion of defendants Joseph DelGreco & Company, Inc. ("DelGreco & Co.") and Joseph DelGreco individually ("Mr. DelGreco") (collectively, "Defendants") for an order staying proceedings in this Court in favor of arbitration of the claims asserted in the Plaintiffs' First Amended Complaint, dated July 31, 2008 (the "Amended Complaint") or, in the alternative, an order staying the proceedings pending the conclusion of arbitration.

By this action, Plaintiffs seek the return of goods which they paid for and own, judgment on a Promissory Note (the "Note") in the amount of $1 million, judgment against Mr. DelGreco on his personal guarantee (the "Personal Guarantee") of all amounts owning under the Note, declaratory judgment affirming Eastwest's right to foreclose on DelGreco & Co.'s property as collateral under a security agreement (the "Security Agreement") that secures DelGreco & Co.'s performance of obligations arising under the Note, and an Order of Foreclosure.

As set forth more fully below, Defendants' motion to stay the action pending arbitration (the "Motion") should be denied for the simple reason that the arbitration clause sought to be invoked is expressly limited in its application to disputes "arising upon or in respect of" the parties' rights under an Exclusive Production, Distribution, and License Agreement (the "Distribution Agreement"), or disagreements as to "the meaning or construction" of the Distribution Agreement. None of the claims in the Amended Complaint arise from or relate to the Distribution Agreement, and determination of Defendants' defaults or Eastwest's rights

under the Note, Security Agreement and Personal Guarantee does not hinge on the meaning or construction of any term in the Distribution Agreement. Moreover, it is clear from the parties' agreements that they did not intend to submit all their disputes to arbitration, only those arising from the Distribution Agreement.

Claims related to the Distribution Agreement were raised in the original Complaint in the Action, to which Defendants initially made an identical motion. Plaintiffs amended the Complaint, as of right pursuant to F.R.C.P. 15(a)(1)(A), as Defendants had not yet – and still have not yet – filed a responsive pleading, removing all causes of action arising out of or even relating the Distribution Agreement. At that time Plaintiffs requested that Defendants original motion be denied as moot given that no claims relating to the limited agreement to arbitrate between the parties remained in the Action. Defendants responded by making the instant motion, despite the lack of any claims relating to the arbitration provision of the Distribution Agreement being raised in the Amended Complaint.

Therefore, Plaintiffs respectfully request that this Court deny Defendants' Motion in its entirety.

## STATEMENT OF FACTS

On or about September 26, 2007, Eastwest and DelGreco & Co. executed (1) the Distribution Agreement; (2) the $1 million Note; and (3) the Security Agreement. On that same date, Mr. DelGreco signed the Personal Guarantee, pursuant to which he personally guaranteed full performance of all of DelGreco & Co.'s obligations arising under the Note and Security Agreement. Declaration of Cary B. Samowitz in Support of Motion to Stay ("Samowitz Decl."),

¶¶3-6, Exs. 2-5. The language of the Distribution Agreement and the Loan Documents[1] demonstrates the parties' clear intent to limit arbitration only to disputes arising from or related to the meaning or construction of the Distribution Agreement.

**I.    The Distribution Agreement And The Note, Security Agreement, and Personal Guarantee are Separate Transactions, Entered Into For Different Purposes**

As its eponymous title suggests, the Distribution Agreement provides Eastwest a license to manufacture, produce and distribute certain of DelGreco & Co.'s products in specified markets. Id., Ex. 2, at ¶3. In exchange, DelGreco & Co. is entitled to payment by Eastwest of royalties in connection with Eastwest's sales of the licensed products. Id., at ¶4. The Distribution Agreement governs the parties' agreement to license, manufacture and sell DelGreco & Co.'s furniture designs over a period of 15 years, whereas the Loan Documents serve the sole purpose of documenting and securing repayment of Eastwest's $1,000,000 loan to DelGreco & Co., which was to be repaid in full in 4 years. Compare id. at ¶2 and id., Ex. 2 at ¶5.2. Of different purposes and duration, the Distribution Agreement stands alone as a complete and separate transaction, independent of the Note, the Security Agreement or the Personal Guarantee.[2]

The $1 million loan ("Loan"), evidenced by the Note and secured by the Security Agreement and the Personal Guarantee, is a separate and discrete transaction. Nothing in the Loan Documents involves or relates to licenses, royalties, or the production or sale of licensed

---

[1] The term "Loan Documents" is defined in paragraph 2 of the Note as follows: 'This Note, the Security Agreement, the Guaranty, and all other agreements, documents and instruments securing or relating to the Loan, are herein collectively called the "Loan Documents." See Samowitz Decl., Ex. 3. The same term, with a similar definition, appears in recital "C" of the Distribution Agreement and in paragraph 3 of the Personal Guarantee. Id., Ex. Nos. 2 and 5.

[2] Contrary to Defendants' conclusory and unsupported allegation on page 2 of their Motion, Defendants' consideration for the rights granted in the Distribution Agreement is the right to royalties called for in that Agreement, not the Loan, which is a separate agreement.

- 3 -

goods, and there are no cross-default provisions. Also, the Loan Documents do not incorporate any of the terms under the Distribution Agreement, and the Distribution Agreement does not refer to, let alone adopt, any of the terms of the Loan Documents. Although early termination of the Distribution Agreement while any portion of the Note remains unpaid may, at the Lender's option, accelerate payment of the Note, such is not a default; this preservation of the Lender's possible setoff ability is merely an additional form of security for the Loan.[3]    Otherwise, performance of the borrower's and guarantor's obligations under the Loan Documents is unrelated to any obligations arising under the Distribution Agreement. Defendants' obligation to repay the $1 million Loan to DelGreco & Co. has little to do with the Distribution Agreement; the Loan and the obligation to repay it exist, regardless of whether Eastwest makes or sells a single licensed product

By contrast, each of the Loan Documents internally reference the others as documents relating to the same transaction – without any reference to the Distribution Agreement with regards to such transaction. Specifically, paragraph 2 of the Note incorporates the Security Agreement and Personal Guarantee by reference and memorializes the parties' purpose in executing the three agreements as follows:

> This Note is given pursuant to a loan (the "Loan") in the principal amount of One Million Dollars (US$1,000,000.00)(the "Loan Amount") by Lender to Borrower and is secured by a security interest granted by Borrower in the Collateral, described in that certain Security Agreement of even date herewith (the "Security Agreement"), executed by Borrower in favor of Lender, and by that certain continuing Guaranty executed by Joseph DelGreco, personally, in favor of Lender, also of even date herewith (the "Guaranty"). (This Note, the Security

---

[3] See Note at ¶ 13 ("Upon the occurrence of an event of default . . . or termination of [the Distribution Agreement] . . ." (emphasis added.) See also Distribution Agreement at ¶14.1 ("Acceleration of Note Upon Termination "). It is worthwhile to note (a) that early termination of the Distribution Agreement is not defined as a default under the Note; (b) default on the Note does not trigger termination of the Distribution Agreement; (c) acceleration of the Note upon early termination of the Distribution Agreement is optional, not automatic; and (d) acceleration requires separate written notice.

Agreement, the Guaranty, and all other agreements, documents and instruments securing or relating to the Loan, are herein collectively called the "Loan Documents.")

Id., Ex. 3, at ¶2 (emphasis added).

Finally, it must be noted that the Distribution Agreement, although signed relatively contemporaneously with the Note, Security Agreement and Personal Guarantee, is excluded from the definition of "Loan Documents" in all of the relevant documentation between the parties. Id.

## II.    The Distribution Agreement's Arbitration Clause Is Limited To That Specific "Agreement"

Of all the documents executed by the parties, the Distribution Agreement is the only document with an arbitration clause:

> If at any time during the Term any dispute, difference, or disagreement shall arise upon or in respect of *this Agreement*, or the meaning or construction hereof, which dispute, difference, or disagreement cannot be resolved between the Parties, every such dispute, difference, or disagreement shall be referred to binding arbitration . . .

Id., Ex. 2, at ¶15.10 (emphasis added).

The capitalized term "Agreement," as used in the arbitration clause, is specifically defined in the first paragraph of the Distribution Agreement.[4]  Thus, the Distribution Agreement expressly defines and distinguishes itself from the Note, Security Agreement, Personal Guaranty and any other documents related to the Loan, which are collectively defined as the "Loan Documents."  See id., Ex. 2. at ¶¶1 and C.  In other words, when the parties intended to refer to the Distribution Agreement or its terms, they used the term "Agreement" and where they

---

[4] "THIS EXCLUSIVE PRODUCTION, DISTRIBUTION, AND LICENSE AGREEMENT ("Agreement") is made and entered into . . ." Id.

intended to refer to the transaction at issue here, they used the term "Loan Documents." They followed the pattern consistently and unambiguously. See e.g., id., at ¶¶1 ("as used in *this Agreement*"); 2 ("This term of *this Agreement* . . . shall commence . . ."); 3.2 ("The license granted under *this Agreement*"); 4.4 ("Royalties payable . . . under *this Agreement*"); 11(v) (each party represents that "it is subject to and bound by . . . *this Agreement*, which is a valid and binding obligation enforceable in accordance with *its* terms . . .") (emphasis added).

By contrast, when the parties intended to refer to the Note, Security Agreement, and Personal Guarantee, they consistently used the defined term "Loan Documents." In fact, the parties expressly distinguished "this Agreement" from the "Loan Documents." See, e.g., id., ¶14.1 ("Notwithstanding anything in this Agreement **or** any of the Loan Documents to the contrary . . ") (emphasis added). In no uncertain terms, the parties intended the transaction embodied in the Distribution Agreement to stand separately and apart from the rest of the documents executed on September 26, 2007. Accordingly, paragraph 15.10 of the Distribution Agreement applies only to disputes arising under or related to the Distribution Agreement, and not to actions to enforce the "Loan Documents."

## III.    The Four Agreements Each Contain Separate Remedies Provisions

In addition to the parties' careful definitions and consistent uses of the defined term "Agreement" versus "Loan Documents" in the Distribution Agreement, the Note, Security Agreement, and Personal Guarantee, each document has its own *separate and different* remedies provisions – and none but the Distribution Agreement limits the parties to arbitration. Specifically, although the Distribution Agreement provides only for arbitration, any default under the Note confers upon Eastwest the right, "in its sole discretion," to exercise "any of the remedies available to it under any or all of the Loan Documents or applicable law . . ." Id., Ex.

- 6 -

3, ¶12. The term "Loan Documents," as consistently used by the parties, refers to only the Note, the Security Agreement, and Personal Guarantee, and by definition *excludes* the Distribution Agreement. Id., ¶2.

The Security Agreement also contains numerous remedies provisions that are completely inconsistent with the arbitration clause in the Distribution Agreement. Specifically, upon the occurrence of any default under the Note, Eastwest is entitled to "enforce payment and *prosecute any action or proceeding* with respect to any and all of the Collateral." Id., Ex. 4, ¶8(b) (emphasis added). Eastwest is also entitled to "all rights and remedies of a secured party under the Uniform Commercial Code" (Id. at ¶8) and to "foreclose the liens and security interests created under this Agreement or under any other agreement relating to the Collateral *by any available judicial procedure or without judicial procedure*." Id., ¶8(d) (emphasis added). In other words, the parties agreed that, under the Security Agreement, not only is Eastwest entitled to judicial remedies, it may also choose to "prosecute any action or proceeding" when a default occurs, it is even entitled to choose *not* to pursue any "judicial procedures" and foreclose on its collateral by non-judicial methods, in private sales or by any other means allowed by law "with or without further notice to [DelGreco & Co.]."[5]

Similarly, the Personal Guarantee, which is an agreement between Eastwest and Mr. DelGreco (not DelGreco & Co.), expressly does not limit Eastwest to only arbitration. Specifically, Eastwest is entitled to "exercise, in its sole discretion, any right and remedies, or any combination of rights and remedies that may then be available, since it is the intent and purpose of [Mr. DelGreco] that the obligations herein shall be *absolute, independent, and*

---

[5] Contrary to the unsupported statement in Defendants' Memorandum at page 2, the Security Agreement secures the *entire* Loan, not merely "part "of the Loan. Moreover, the Security Agreement does not secure the Licensor's performance under the Distribution Agreement.

*unconditional* under any and all circumstances." Id., Ex. 4, at ¶5 (emphasis added). Furthermore, Mr. DelGreco "waive[d] and agree[d] not to assert or take advantage of . . . any right to require [Eastwest] . . . to pursue any other remedy in its power." Id. Finally, contrary to another of Defendants' self-serving, unsupported misstatements, Plaintiffs' cause of action based on Mr. DelGreco's Personal Guarantee is based upon Mr. DelGreco's Personal Guarantee of the Loan, Note and Security Agreement, *not a guarantee of the Distribution Agreement*. See Defendants' Memorandum at 3. Defendants repeated carelessness with the facts reveals the frantic desperateness of their struggle to justify the Motion and avoid this Court's jurisdiction.

## LEGAL STANDARD

There is no denying that federal policies favor arbitration. However, it is equally undeniable that courts have no power to compel arbitration where the parties have not agreed to it. "[A]rbitration is entirely a creature of contract" and "which disputes are subject to arbitration are determined entirely by agreement between the parties." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006). "Without the contract, the arbitration . . . . never could exist." Id. Agreements to arbitrate are enforced only "in accordance with their terms." Volt Info. Sci. v. Bd. of Trustees, 489 U.S. 468, 478 (1989). Therefore, "[t]he scope of an arbitration clause, like any contract provision, is a question of the intent of the parties." S.A. Mineracao Da Trinadade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 193 (2d Cir. 1984).

To rule on a motion to stay action in favor of arbitration, the Second Circuit has identified two issues to be addressed: (1) "whether the parties agreed to arbitrate," and, if so, (2) "whether the scope of [that] agreement encompasses the claims" at issue. Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 666 (2d Cir. 1997). In deciding whether the parties agreed to arbitrate a certain matter, "courts should apply state-law principles that govern

the formation of contracts." <u>Mehler v. Terminix, Int'l Co. L.P.</u>, 205 F.3d 44, 48 (2d Cir. 2000).

Here, because the parties only agreed to arbitrate claims arising under or relating to interpretation

of the Distribution Agreement, and because none of the claims in the Amended Complaint arise

under or relate to interpretation of the Distribution Agreement, Defendants' Motion must be

denied.

**ARGUMENT**

**I.    THE PARTIES ONLY AGREED TO ARBITRATE CLAIMS ARISING
UNDER THE DISTRIBUTION AGREEMENT**

      **A.    There is No Agreement to Arbitrate Any Claims Other Than Ones
Arising Under the Distribution Agreement**

Only the Distribution Agreement – not the Note, Security Agreement, or Personal

Guarantee – contains an arbitration clause.  The clause expressly states that it is limited,

applicable only if there is a "dispute, difference, or disagreement [that] shall arise upon or in

respect of <u>this</u> Agreement or the meaning or construction [of the Distribution Agreement]."

Samowitz Decl., Ex. 2, at ¶15.10 (emphasis added).  Because the parties were deliberate in their

definitions of the terms "Agreement" and "Loan Documents," and because they were not shy

about using one or the other defined term when they intended to be bound by those definitions,

the fact that the parties specifically limited the application of paragraph 15.10 to conflicts arising

under the Distribution Agreement shows that they never intended to waive their rights to litigate

disputes arising under the Note, Security Agreement or Personal Guarantee in court.  Also, the

fact that the Note, Security Agreement, and Personal Guarantee do not contain any references to

arbitration or the Distribution Agreement, and in fact they expressly provide for remedies *outside*

*of* arbitration (even extrajudicial remedies), it is clear that the parties did not agree to resolve all

their disputes in arbitration.  Because it is clear that the parties intended the transactions

- 9 -

evidenced by these documents to be separate and discrete, this Court must respect that intent and deny the Motion.

**B.    The Fact that the Distribution Agreement, Promissory Note, Security Agreement, and Personal Guarantee Were Signed On the Same Day Does Not Render Them One Contract**

Defendants' sole basis for the argument that any and all disputes under the Note, Security Agreement, and Personal Guarantee are subject to the arbitration provision in the Distribution Agreement is that all four documents were executed on or about the same day. Motion at 7.  However, not only is Defendants' position completely unsupported by facts or the case law they cite to, the argument is also far too simplistic.

The mere fact that contractual documents were executed at the same time does not, as a matter of law, mean that they should be interpreted as one document or that an arbitration provision in one of the documents automatically applies to the rest.  See Rosen v. Mega Bloks Inc., No. 06-Civ. 3474, 2007 WL 1958968, at *5 (S.D.N.Y. July 6, 2007).  "Parties are free to enter into multiple contracts as part of a single transaction *without the provisions in one contract governing another contract*."  Id. (emphasis added).  In fact, "even though several instruments relating to the same subject and executed at the same time should be construed together in order to ascertain the intention of the parties, it does not necessarily follow that those instruments constitute one contract or that one contract was accordingly merged in or unified with another so that every provision in one becomes a part of every other . . . [It] does not mean that the provisions of one instrument are imported bodily into another, contrary to the intent of the parties."  Id., citing 11 Williston on Contracts §30:26 (4th ed.).

Based on this reasoning, courts have declined to blindly extend an arbitration provision in one agreement to others just because the agreements were entered into contemporaneously.  For example, in Rosen, the plaintiffs and defendants entered into a stock

- 10 -

purchase agreement ("SPA"). Id., at *1. Annexed to the SPA as exhibits were two employment agreements for two of the plaintiffs and, as part of the same transaction, the plaintiffs also entered into non-competition agreements with defendants. Id. Not only were the SPA, the two employment agreements, and the non-competition agreements executed at the same time, the index to the SPA stated that the employment agreements were an "integral part[s]" of the SPA. Id., at *3.  Because the SPA and the non-competition agreements did not have arbitration provisions, but the employment agreements did, the question before the Rosen Court was whether, as a matter of contract interpretation, the arbitration provisions in the employment agreements should be extended to the other two contemporaneous agreements. Id., at *2.  The Court declined to do so.  Instead, finding that the parties did not put an arbitration clause in the SPA for a reason, the Rosen Court concluded that "[i]nasmuch as the SPA does not contain an arbitration clause, there is no reason to conclude that the parties' inclusion of arbitration clauses in the Employment Agreements meant that they agreed to arbitrate any possible claim arising under the SPA." Id., at *5.  Here, had the parties wished to refer *all* disputes to arbitration, they clearly knew how to do so; the fact that they did not to so – and instead expressly provided multiple other options for judicial and non-judicial relief – is clear evidence of their intent.

Other courts have similarly held that the mere fact that agreements were entered into at around the same time does not mean that arbitration provisions automatically apply to all of them. See e.g., Radio Computing Servs., Inc. v. Cool Partners, Inc., No. 01 CIV. 5892, 2001 WL 799579, at *2 (S.D.N.Y. July 12, 2001) (fact that contracts were executed at the same time was but one factor in determining whether parties intended to arbitrate all claims).

Here, it may be true that the Note, Security Agreement, Personal Guarantee, and Distribution Agreement were executed substantially contemporaneously, but, contrary to

- 11 -

Defendants' representation, this fact alone does not render the arbitration provision in the Distribution Agreement automatically applicable to each of the other three agreements. See id.; see also Rosen, 2007 WL 1958968, at *5-7. For one, the Personal Guarantee must be interpreted separately because it involves different signatories. More importantly, however, it is clear from the precise language used in the Distribution Agreement -- expressly limiting the arbitration clause only to disputes which "arise upon or in respect to this Agreement" -- and the presence of separate remedy provisions inconsistent with arbitration in the other three agreements -- that the parties did not intend to extend the arbitration clause beyond the four corners of the Distribution Agreement. Therefore, because the timing of the documents is not dispositive and evidence of contrary intent is clear, this Court must construe the Note, Security Agreement, Personal Guarantee, and Distribution Agreement as *separate* agreements and conclude that the arbitration provision in the Distribution Agreement applies only to disputes arising under that specific agreement.

      **C.**     **Defendants' Position is Inapposite to the Very Case Law They Cite**

      Defendants cited to several cases in support of their argument that paragraph 15.10 of the Distribution Agreement applies to all claims raised by Plaintiffs simply because the agreements were signed at the same time. Motion, at 7-8. However, the cases cited for this proposition do not control the case at bar because they are readily distinguishable from the facts before the Court.

      To begin, Defendants cite Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 224 (2d Cir. 2001) as supporting their position, in that case, the court extended an arbitration clause in a charter agreement to apply to later-issued letters of indemnity. Motion, at 7. However, this case is readily distinguished because, although the Distribution Agreement and the "Loan Documents" in this case relate to completely different

- 12 -

subject matters and transactions, the charter agreement in <u>Louis Dreyfus</u> expressly provided for the future issuance of letters of indemnity, and those letters were the subject of the lawsuit. <u>See</u> 252 F.3d at 229.

Similarly, <u>Cohen v. Looking for Palladin, LLC</u>, No. 07CV6359, 2008 WL 544597 (S.D.N.Y. Feb. 29, 2008) and <u>Alemac Ins. Servs., Inc. v. Risk Transfer Inc.</u>, No. 03 Civ. 1162, 2003 WL 22024070 (S.D.N.Y. Aug. 28, 2003) are inapposite because, unlike in this case where the Distribution Agreement lays out none of the terms of the "Loan Documents," the agreements in <u>Cohen</u> and <u>Alemac</u> were expressly inter-related and necessary to complete the parties' transactions. In <u>Cohen</u>, one agreement governed the purchase of a security, and the other (the one containing the arbitration clause) governed the operational terms of the relationship "that could only have been created by the purchase of the security" under the first agreement. 2008 WL 544597, at *2. In <u>Alemac</u>, the agreement containing the arbitration clause was found to apply to the partnership agreement at issue because the partnership agreement expressly incorporated the separate agreement and stated that <u>it</u> established the terms of the partnership. 2003 WL 22024070, at *5. By way of contrast, here, although the Distribution Agreement makes brief mention of the $1 million Loan, there is no cross-incorporation of the two groups of agreements whatsoever.

For that same reason, the facts in this Court's opinion in <u>Liberty USA Corp. v. Buyer's Choice Ins.</u>, 386 F. Supp. 2d 421 (S.D.N.Y. 2005) are also materially different. <u>See</u> 386 F.Supp. 2d at 425.[6] Unlike the promissory note and asset purchase agreement at issue in <u>Liberty</u>, the agreements at issue in this case do not share the same purpose or involve the same parties. Also, the parties never specifically incorporated any of the Loan Documents into the Distribution

---

[6] The <u>Liberty</u> case relates to a forum selection clause, not an arbitration clause.

- 13 -

Agreement, and unlike the facts in <u>Liberty</u>, the $1,000,000 Loan is not specifically cited as consideration for the Distribution Agreement. <u>See</u> <u>id.</u>, at 426.

Lastly, Defendants' reliance on <u>WorldCrisa Corporation v. Armstrong</u>, 129 F.3d 71 (2d Cir. 1997) is similarly misplaced because, unlike Eastwest's claims which relate to DelGreco & Co.'s default on the Note and Security Agreement (as opposed to the Distribution Agreement), the cause of action at issue in <u>WorldCrisa</u> was breach of the agreement containing the arbitration clause, and the <u>WorldCrisa</u> Court simply found that the provisions in the guaranty as to jurisdiction and venue were not sufficiently "clear and specific" to waive Armstrong's right to arbitrate a claim that was "squarely covered by the arbitration clause." <u>Id.</u>, at 75.

Accordingly, because Defendants' cases are factually far different from the case at bar, and because it is clear from the language of the Distribution Agreement and the Loan Documents that the parties intended them to be two separate and distinct transactions, the arbitration clause in the Distribution Agreement should be limited only to disputes arising under the Agreement itself.

## II.   THE ARBITRATION PROVISION IN THE DISTRIBUTION AGREEMENT DOES NOT ENCOMPASS THE CLAIMS RAISED IN THE AMENDED COMPLAINT

The arbitration provision in the Distribution Agreement applies only to "any dispute, difference or disagreement . . . aris[ing] upon or in respect of" the Distribution Agreement, or the "meaning or construction" of that Agreement.   The Amended Complaint alleges six causes of action: (i) conversion of goods paid for and owned by Plaintiffs; (ii) default and collection of the Note; (iii) recovery of an additional $850,000 loaned to DelGreco & Co.; (iv) enforcement of Mr. DelGreco's Personal Guarantee; (v) foreclosure of Eastwest's security interest arising under the Note and Security Agreement; and (vi) declaratory relief establishing Eastwest's rights under the Security Agreement.

- 14 -

The first step in determining whether the scope of the Distribution Agreement's arbitration provision encompasses Plaintiffs' claims is to decide whether the provision is broad or narrow. See Mehler, 205 F.3d at 49. Where the arbitration provision is broad, there arises a presumption of arbitrability, and arbitration of a collateral matter may be ordered if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under [the agreement containing the provision]." Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995). However, even the potential of a presumption in favor of arbitration "does not alter the fact that the ultimate purpose of the Court's inquiry is to determine whether the parties intended that the particular claims at issue here be arbitrated." Rosen, 2007 WL 1958968, at *8.

### A. Plaintiffs' Claim for Conversion Falls Outside of the Scope of the Distribution Agreement Because It Deals Strictly With Ownership of Property

An order to stay or to compel arbitration here is improper because, even assuming that the arbitration provision in the Distribution Agreement is broad, none of Plaintiffs' claims implicates the construction of the Distribution Agreement or any party's rights or obligations under the Distribution Agreement.

Plaintiffs' conversion claim is simple -- they allege that Defendants tortiously took possession of goods that Plaintiffs have paid for in part, are continuing to pay for, and as to which *only* Plaintiffs have made payment. Amended Complaint at ¶¶42-45. While it is true that Plaintiffs' right to *sell* licensed goods in the United States, Canada and elsewhere is governed by the Distribution Agreement, the claim that Defendants have exercised unlawful dominion over such goods does not implicate Plaintiff' right to *sell* such goods and is not resolved by application of the Distribution Agreement. Ownership of those goods is a question to be determined by state law, not the Distribution Agreement. Nor does the claim for conversion

- 15 -

implicate "the meaning or construction" of the Distribution Agreement or interpretation of the parties' rights thereunder. In other words, Plaintiffs merely seek the return of their property and compensation for the damages caused by Defendants' interference with their property rights. The conversion claim stands with or without the Distribution Agreement.

B.    **The Claims for Collection of the Loan and for Enforcement of the Note and Security Agreement Are Not Claims That "Arise Upon or In Respect of" the Distribution Agreement**

Eastwest's claims for enforcement of the Note and Security Agreement and for Declaratory Judgment with respect to its rights in the Collateral (i.e., the Second, Fifth and Sixth Causes of Action) all arise from DelGreco & Co.'s multiple defaults under the Note and Security Agreement. Collectively, these claims seek judgment allowing Eastwest to recover the amounts currently owing thereunder and to foreclose on its collateral for the Loan. See Amended Complaint at ¶¶49-52, 57-72. As discussed above, Eastwest's right to foreclose on the collateral upon DelGreco & Co.'s default is expressly provided for in paragraph 12 of the Note and paragraph 8 of the Security Agreement. That right is not derived from and has no relationship whatsoever with the Distribution Agreement. Furthermore, a determination that DelGreco & Co. defaulted on the Note, the right of Eastwest to foreclose on its collateral, and the amount of Eastwest's damages do not implicate the construction or application of a single term in the Distribution Agreement.

C.    **The Claim for Guaranty Falls Outside of the Scope of the Distribution Agreement**

In its fourth cause of action, Eastwest seeks judgment against Mr. DelGreco personally for all amounts DelGreco & Co. owes under the Note. Amended Complaint at ¶¶57-59. This claim is also completely unrelated to the Distribution Agreement and it cannot possibly be a dispute or disagreement "arising under" the Distribution Agreement because Mr. DelGreco

is not a party to the Distribution Agreement. A determination of Mr. DelGreco's obligations under the Personal Guarantee does not implicate an interpretation or construction of the Distribution Agreement, nor does resolution of this cause of action change or determine any parties' rights or obligations under the Distribution Agreement. Accordingly, the arbitration clause in the Distribution Agreement does not, and cannot, compel arbitration of this claim.

**D.      The Cause of Action for Complaint on Account Is Also Completely Unrelated to the Distribution Agreement**

Eastwest's claim for the recovery of an $850,000 loan Eastwest made to DelGreco & Co. is so obviously outside of the scope of the Distribution Agreement that Defendants did not even bother to address it in their Motion. Regardless, paragraph 15.10 of the Distribution Agreement cannot possibly encompass this claim because the $850,000 loan was not the subject of any of the four agreements that Defendants now argue should be construed as one, simply because they were all signed on September 26, 2007. Arbitration of this cause of action cannot be compelled under any theory and Plaintiffs are entitled to their day in court to collect this amount.

**E.      Defendants' Alleged Fear of Concurrent Actions and Inconsistent Results Is A Specious and Misleading Argument**

Defendants speciously argue that "if a stay is not granted, Defendants will be required to defend themselves in two concurrent actions arising from the same set of facts, which may result in inconsistent results." But, there is no other action. Neither party has filed – or even begun the process to initiate – a demand for arbitration. Defendant's alleged fear of inconsistent results is purely imaginary and they fail to even allege how such results might come to pass, much less how they might be inconsistent.

Equally groundless is Defendants' bogus argument that the disputes at issue here "cannot be resolved unless and until the Distribution Agreements disputes are resolved." Motion

- 17 -

at 12. There are no such disputes pending elsewhere and all disputes at issue here can be resolved without reference to the Distribution Agreement. Either DelGreco & Co. is in default under the terms of the Note and Security Agreement, or it is not – it is that simple. Either Mr. DelGreco is liable on his Personal Guarantee or he is not. The facts will either show that Plaintiffs paid for and are the owners of the Machin Goods or they will not. There are no issues of trademarks, design licensing, royalties or any of the other myriad of issues covered by the Distribution Agreement. The causes of action stated in the Amended Complaint arise and can be fully resolved independent of any obligations or interpretation of the Distribution Agreement. Disingenuous claims of concurrent actions and inconsistent results cannot create such problems where they do not exist.

- 18 -

## CONCLUSION

The parties did not intend to submit claims arising under the Loan Documents to arbitration, only claims arising under the Distribution Agreement. Not one of the causes of action alleged in the Amended Complaint arises from, relates to or requires the construction or interpretation of the Distribution Agreement. Accordingly, Plaintiffs respectfully submit that this action should not be stayed pending referral to arbitration, and that each and every one of Plaintiffs' claims herein should be heard and determined by this Court.


DATED:       New York, New York
             August 25, 2008

                          Respectfully submitted,

                          SEYFARTH SHAW LLP

                          By: _____
                              David M. Monachino (DM 1527)
                              Eddy Salcedo (ES 3391)
                              620 Eighth Avenue
                              New York, New York 10020
                              Tel: (212) 218-5500

                              -and-

                              David Frazee (CA Bar No.195375)
                              (admission pro hac vice pending)
                              Jonmi N. Koo (CA Bar No. 231336)
                              (admission pro hac vice pending)
                              Perkins Coie LLP
                              101 Jefferson Drive
                              Menlo Park, California  94025-1114
                              Tel: (650) 838-4300

                              Attorneys for Plaintiffs

- 19 -

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

EASTWEST INTERNATIONAL (TAIWAN)  :
ENTERPRISES, a corporation formed under the :
laws of Taiwan (ROC); and VICTORIA POINT :   Case No.: 08 CIV 6124
CORPORATION, a corporation formed under  :
the laws of the British Virgin Islands,
                                   :      **CERTIFICATE OF SERVICE**
               Plaintiffs,       :
                                     :
     -against-                 :
                                     :
JOSEPH DELGRECO & COMPANY, INC., a  :
corporation formed under the laws of the State  :
of New York; and JOSEPH DELGRECO, an   :
individual,                            :
                                     :
              Defendants.     :

---

EDDY SALCEDO, states under penalty of perjury:

I hereby certify that on August 25, 2008, I electronically filed Plaintiff's Memorandum of

Law in Opposition to Defendants' Motion to Stay Action in Favor of Arbitration or, in the

Alternative, Pending Arbitration, with the Clerk of the District Court using the CM/ECF system,

and caused to be served true and correct copies of the foregoing enclosed in a post-paid envelope

by U.S. first-class regular mail in an official depository under the exclusive care and custody of

the United States Postal Service within the State of New York at the addresses listed below:

      **Cary Brian Samowitz, Esq.**
      DLA Piper US LLP (NY)
      1251 Avenue of the Americas
      New York, NY 10020
      *Attorneys for Defendants.*

Dated:  New York, New York
        August 25, 2008

                                            Eddy Salcedo