Cary B. Samowitz
cary.samowitz@dlapiper.com
Barbara L. Seniawski
barbara.seniawski@dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Tel. (212) 335-4500
Fax. (212) 335-4501
*Attorneys for Defendants*
*Joseph DelGreco & Company, Inc. and*
*Joseph DelGreco*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

EASTWEST INTERNATIONAL (TAIWAN) :
ENTERPRISES, a corporation formed under :
the laws of Taiwan (ROC); and VICTORIA :
POINT CORPORATION, a corporation formed :
under the laws of the British Virgin Islands, :       Case No.: 08-CIV-6124 (DAB)
                                              :
                 Plaintiffs,                  :
                                              :
       -against-                              :
                                              :
JOSEPH DELGRECO & COMPANY, INC., a :
corporation formed under the laws of the State :
of New York; and JOSEPH DELGRECO, an :
individual,                                   :
                                              :
                 Defendants.                  :

------------------------------------- X

**DEFENDANTS' REPLY TO OPPOSITION TO MOTION TO STAY ACTION
IN FAVOR OF ARBITRATION OR, IN THE ALTERNATIVE,
PENDING ARBITRATION**

TABLE OF CONTENTS

A.  ALL OF PLAINTIFFS' CLAIMS "TOUCH MATTERS" COVERED BY THE PARTIES' ARBITRATION AGREEMENT .................................................................. 1

B.  THE AGREEMENTS MUST BE READ TOGETHER .................................................. 3

    1.  Plaintiffs' Authority Supports Defendants' Arguments ......................................... 4

    2.  Plaintiffs' Argument That the Language "This Agreement" Limits the Scope of the Broad Arbitration Clause Is Contradicted by Established Law ........................ 5

    3.  Standard or Boilerplate Remedy Language in Related Agreements Does Not Change the Application of An Arbitration Clause in an Umbrella Agreement to Related Agreements ............................................................................................... 6

C.  IN THE ALTERNATIVE, THE ACTION SHOULD BE STAYED PENDING THE OUTCOME OF THE ARBITRABLE CLAIMS ............................................................. 8

CONCLUSION .................................................................................................................... 9

Defendants Joseph DelGreco & Company, Inc. and Joseph DelGreco respectfully submit this reply to Plaintiffs' Opposition to Motion to Stay Action in Favor of Arbitration or, in the Alternative, Pending Arbitration ("Opposition" or "Opp.").

### A. ALL OF PLAINTIFFS' CLAIMS "TOUCH MATTERS" COVERED BY THE PARTIES' ARBITRATION AGREEMENT

Plaintiffs do not dispute that the Exclusive Production, Distribution, and License Agreement between Eastwest International (Taiwan) Enterprises and Joseph DelGreco & Company, Inc. (the "Distribution Agreement") contains a binding arbitration clause. Plaintiffs nevertheless argue that because their amended pleading has deleted their original claim for breach of that Distribution Agreement, their remaining claims are no longer subject to arbitration. Plaintiffs are wrong. There is simply no way to construe Plaintiffs' remaining claims, and Defendants' defenses and potential counterclaims, without also construing the Distribution Agreement.

As the Second Circuit stated in *Genesco, Inc. v. T. Kakiuchi & Co.* in evaluating the scope of arbitration clauses: "we focus on the allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them." 815 F.2d 840, 846 (2d. Cir. 1987) (internal citation omitted).

Here, Plaintiffs allege in the very first sentence of the first numbered paragraph of their Amended Complaint that "[t]his action involves ... a purported joint venture partnership with a Taiwanese manufacturer and distributor of high-end outdoor furniture products." Am. Compl. ¶ 1. The "joint venture partnership" Plaintiffs themselves allege was, of course, created by the Distribution Agreement. Thus, Plaintiffs concede that "this action" concerns the Distribution Agreement.

Plaintiffs' concession is no doubt driven by the explicit language of the Distribution Agreement. Specifically, per the Distribution Agreement, the dispute involves a venture contemplated as follows:

> A. Licensor is in the business of designing, marketing for sale, and selling outdoor furniture and accessories. In connection with that business, Licensor owns all right, title, and interest in and to the "DelGreco" brand name as used in the manufacture, distribution, and sale of outdoor furniture and accessories.
>
> B. Licensee, through certain of its wholly-owned subsidiaries and affiliates, is in the business of manufacturing, warehousing and distributing in the United States and worldwide various manufactured goods, including but not limited to outdoor furniture and accessories.
>
> C. *Licensor has requested from Licensee, and Licensee is willing to provide to Licensor, a loan* in the amount of One Million Dollars (US$1,000,000) (the "Loan"), subject to the covenants, terms, and conditions set forth in that certain Promissory Note (the "Note") to be made by Licensor in favor of Licensee, the maturity of which is set forth in the Note, together with that Continuing Guaranty, that certain Security Agreement, and any and all other documents and instruments to be executed and/or delivered concurrently with the Note and this Agreement (collectively, the "Loan Documents").
>
> D. Licensee desires to obtain from Licensor, and Licensor desires to grant to Licensee, subject to the covenants, terms, and conditions set forth in this Agreement, an exclusive license to manufacture outdoor furniture and accessories under the DelGreco brand name, to distribute the same to Licensor and its affiliates for sale within the United States and Canada, and to distribute and sell (or cause or permit others to distribute and sell in accordance with the terms of this Agreement) the same anywhere in the world outside the United States and Canada.

Motion to Stay, Ex. 2 at p. 1 (emphasis added). Thus, the Distribution Agreement describes and initiates the parties' venture and explicitly provides for the "Loan Documents" as initial funding for the venture. For this reason, the factual allegations in Plaintiffs' Amended Complaint undoubtedly "touch matters" of the Distribution Agreement. For example, Plaintiffs admit that the dispute regarding the "Machin Goods" involves a dispute under the Distribution Agreement. See, e.g., Am. Compl. ¶ 28. Plaintiffs' allegations regarding alleged improper expenditures stem

2

from Plaintiffs' belief that such expenditures should have been funneled to the joint venture. *See, e.g.,* Am. Compl. ¶ 1. Defendants will defend against the allegations of default under the Note, Security Agreement, Guaranty, and purported loan by showing that obligations under the Distribution Agreement were breached and in fact such breaches *prevented* Defendants' performance to the extent any such deficiency may exist.

### B.   THE AGREEMENTS MUST BE READ TOGETHER

The Note, Guaranty, and Security Agreement are all referenced in the Distribution Agreement. Motion to Stay at 9 (Ex. 2). The purported loan at issue was related to the joint venture. Further, the dispute over the Machin Goods arose directly out of the Distribution Agreement. (Am. Compl. ¶¶ 28, 32, 33, 35-36, 42). The exact same effective date for four out of five of the alleged agreements at issue (with the fifth coming slightly later) further supports that they are part of the same subject matter. The agreements involve only the parties and parties' affiliates involved in the business venture. *See* Motion to Stay at 7-10.

Yet, despite their own statement in their Amended Complaint, Plaintiffs seek to assert the untenable factual argument that the action is not subject to arbitration because "the Distribution Agreement and the 'Loan Documents' in this case relate to completely different subject matters and transactions...." Opp. at 12-13. Plaintiffs' argument is nothing more than a transparent attempt to avoid arbitration.

New York law is unequivocal that where agreements relate to the same subject matter and are executed at the same time or an agreement they must be read together, particularly when one of the agreements, such as the Distribution Agreement, is "an umbrella" for other agreements. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224-25 (2d Cir. 2001); *S.A. Mineracao Da Trinidade-Samitri v. Utah Int'l Inc.*, 745 F.2d 190, 195-96 (2d Cir. 1984); *Flemington Nat'l Bank & Trust Co. v. Domler Leasing Corp.*, 65 A.D.2d

3

29, 32, 410 N.Y.S.2d 75, 77 (1st Dep't 1978) *aff'd* 48 N.Y.2d 678, 421 N.Y.S.2d (1979). Because the Distribution Agreement is an umbrella for the parties' business venture, the agreements in dispute relate to the same subject (the operation of a outdoor furniture business venture between the parties), and, as further evidence of the parties' intent, the agreements were made effective at the same date, they must be read together as comprising one transaction and as subject to mandatory arbitration.[1] As discussed below, Plaintiffs' attempts to argue otherwise rely on immaterial distinctions and incorrect readings.

### 1. *Plaintiffs' Authority Supports Defendants' Arguments*

Plaintiffs rely on *Rosen v. Mega Bloks Inc.*, No. 06 Civ. 3474, 2007 WL 1958968 (S.D.N.Y. July 6, 2007) in their opposition (Opp. at 10), which case only proves Defendants' point. Per *Rosen*, in determining the scope of an arbitration clause, New York law holds that where "the allegations underlying the claims 'touch matters' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Rosen*, 2007 WL 1958968 at *8 (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999)). Furthermore, in *Rosen*, the Magistrate upheld the principle that where an umbrella agreement contained an arbitration clause, the clause would apply to agreements under that umbrella. On the facts of that case, unlike here, however, the subsidiary agreement contained the arbitration clause and so the Magistrate did not apply that clause to the umbrella agreement.

---

[1] Plaintiffs misstate Defendants' argument on this point. *Compare* Opp. at 10 ("Defendants' sole basis for the argument that any and all disputes under the Note, Security Agreement and Personal Guaranty are subject to the arbitration provision in the Distribution Agreement is that all four documents were executed on or about the same day.") *with* Motion to Stay at 7-10, 9 (discussing interrelated nature Plaintiffs' claims with the parties' business venture in the Distribution Agreement and stating "the agreements about which Plaintiffs' complain ... would not exist but for the Distribution Agreement").

Similarly, *Radio Computing Servs., Inc. v. Cool Partners, Inc.*, No. 01 Civ. 5892, 2001 WL 799579 (S.D.N.Y. July 12, 2001), relied on by Plaintiffs (Opp. at 11) also supports Defendants' position. In *Radio Computing*, the Court held in pertinent part that a license agreement and support and enhancement agreement "were contemplated and executed together and were all part of the same arrangement between the parties." *Id.* at *2 (quoting *Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Serv., Inc.*, 962 F. Supp. 385, 390 (S.D.N.Y. 1997)). Because the support and enhancement agreement was collateral to (necessarily related to and dependent upon the existence of the License Agreement), the license agreement's arbitration clause also applied to the support and enhancement agreement. *Radio Computing*, 2001 WL 799579 at *2. The Court reiterated the principle that: "'If the allegations underlying the claims 'touch matters' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them.'" *Id.* at *1 (quoting *Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1995)).

Finally, Plaintiffs incorrectly state that *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997), involved only a breach of contract claim where the contract at issue contained an arbitration clause. To the contrary, the district court action involved claims of breach of the main agreement (which contained an arbitration clause) as well as claims on a related guaranty (which contained no arbitration clause)—which is a fact squarely on point with the facts here. The Second Circuit held that the arbitration clause applied to the Guaranty despite the lack of its own arbitration provision.

2. ***Plaintiffs' Argument That the Language "This Agreement" Limits the Scope of the Broad Arbitration Clause Is Contradicted by Established Law***

Plaintiffs do not dispute that the language of the arbitration provision under the Distribution Agreement is what courts have described as "broad." Opp. at 15. And that,

5

"[w]here the arbitration provision is broad, there arises a presumption of arbitrability...." *Id.* Instead, Plaintiffs urge the court to accept the semantic argument that the phrase "this Agreement" in the arbitration clause limits the scope of its applicability to breach of the terms of the Distribution Agreement. Not only do Plaintiffs ask the Court to ignore the facially broad language in the clause including "any dispute, difference, or disagreement shall *arise upon or in respect of*" the Distribution Agreement, but in doing so, they ask the Court to make new law that the phrase "this Agreement" overrides the rest of the terms of the provision.

Flatly contradicting Plaintiffs' argument, the *Radio Computing* Court held that an arbitration clause that referenced and defined the particular agreement of which it was a part was (a) broad and (b) applied to claims under the Support and Enhancement Agreement -- even where (like the Note, Guaranty, Security Agreement, and purported second loan) the Support and Enhancement Agreement did not explicitly reference the License Agreement. *Radio Computing*, 2001 WL 799579 at *1 (arbitration clause provided: "[d]isputes arising out of *the License Agreement* will be settled by arbitration...") (emphasis added); *see Information Sciences Inc. v. Mohawk Data Science Corp.*, 43 N.Y.2d 918, 919-920, 403 N.Y.S.2d 730, 731 (1978) (claims subject to arbitration under clause that states "any controversy or claim arising out of *this Agreement* ... or any dispute arising out of the interpretation or application of this Agreement..." is subject to arbitration) (emphasis added).

3.  ***Standard or Boilerplate Remedy Language in Related Agreements Does Not Change the Application of An Arbitration Clause in an Umbrella Agreement to Related Agreements***

Plaintiffs' argument that because the Note, Security Agreement, and Guaranty "expressly provide for remedies outside of arbitration (even extra-judicial remedies)," the parties "did not agree to resolve all their disputes in arbitration" is simply incorrect. Opp. at 9. New York law is clear that the boilerplate provisions cited by plaintiffs refer to remedies available <u>after</u> arbitration

has determined the merits of the dispute. As a New York appellate court has said: "'collection' language [in a] note should not be read to dilute the clear intent of the parties to arbitrate disputes or claims arising out of the agreement," where "the note is consideration for the agreement, and this an essential and integral part thereof." *Grossman v. Laurence Handprints-NJ, Inc.*, 90 A.D.2d 95, 103, 455 N.Y.S.2d 852, 857 (2d Dep't 1982).

In *Grossman v. Laurence Handprints-NJ, Inc.*, the plaintiff-seller and defendant-purchaser entered into a sale contract for all the stock of a business. *Id.* at 96, 455 N.Y.S.2d at 853. The contract of sale expressly contemplated a promissory note in the amount of $40,000 as part of the transaction. *Id.* The sale contract also contained an arbitration clause specifying arbitration before the American Arbitration Association of any and all disputes. *Id.* at 99, 455 N.Y.S.2d at 855. The plaintiff sued for the full $40,000 value of the note when the defendant allegedly defaulted on payments of the Note, in addition to other claims. *Id.* at 96, 455 N.Y.S.2d at 853. The defendant then sought to compel arbitration of the dispute pursuant to the arbitration clause in the sale contract. In opposition, the plaintiff argued that the note was a separate and complete instrument. *Id.* at 100, 455 N.Y.S.2d at 855. The state appellate court rejected plaintiff's argument. The court held:

> This dispute is centered exclusively around the respective claims of the parties relating to the performance or nonperformance of the purchase and sale terms of the agreement. Therefore, the later 'collection' language of the note should not be read to dilute the clear intent of the parties to arbitrate disputes or claims arising out of the agreement, since the note is the consideration for the agreement, and thus an essential and integral part thereof.

*Id.* at 103, 455 N.Y.S.2d at 857. The appeals court explained that "standard or boilerplate language" in the promissory note regarding a jury waiver and right to attorneys fees was not intended to preclude arbitration of disputes relating to the note. *Id.* at 101, 455 N.Y.S.2d at 856.

Instead, such provisions "properly pertain to potential litigation associated with arbitration, or to the situation where arbitration is waived." *Id.* at 101-02, 455 N.Y.S.2d at 856.

In fact, where an arbitration clause explicitly exempted from arbitration any controversy or claim arising out of an agreement from "default in the payment of any charges due hereunder," the New York Court of Appeals held that "the exclusion applies only to default in payment for reasons other than nonperformance of the sales and service contract provisions, at which point, there would be little reason to use arbitration as a collection procedure." *Information Sciences*, 43 N.Y.2d at 919, 920, 403 N.Y.S.2d at 731, 732. In other words, despite express language exempting a payment dispute from arbitration, the Court of Appeals ordered arbitration of claims that the plaintiff argued were strictly payment related and held, even in the face of this language, payment disputes were limited to situations where only collection was at issue. Thus, arbitration applies *a fortiori* here where no such exception is included in the arbitration clause and the alleged defaults arise from nonperformance of contractual obligations. This action is not a simple collection dispute.

### C. IN THE ALTERNATIVE, THE ACTION SHOULD BE STAYED PENDING THE OUTCOME OF THE ARBITRABLE CLAIMS

Because Plaintiffs failed to submit the dispute to arbitration (which was their burden under the Distribution Agreement), Defendants have filed a demand with the American Arbitration Association for arbitration of all disputes between the parties per the terms of the Distribution Agreement. *See* Declaration of Cary B. Samowitz in Support of Defendants' Reply, Ex. 1.

As Defendants argued in their Motion to Stay, and as Plaintiffs do not dispute, claims under the Distribution Agreement clearly are subject to arbitration. Motion to Stay at 11-13. Therefore, to the extent this Court does not stay this entire action because it deems one or more

of the claims to be non-arbitrable, this action should still be stayed pending the outcome of the arbitration because the arbitration necessarily will resolve matters underlying the issues here. In fact, in their Opposition, Plaintiffs do not dispute that the arbitration proceeding will likely resolve key claims and defenses of both parties arising from the Distribution Agreement and affecting the status of the Machin Goods, the Note, the Guaranty, the Security Agreement and the purported loan. Rather, Plaintiffs argue that no arbitration is pending. (Opp. at 17.) Because arbitration will necessarily involve and resolve many (if not all) of the claims and defenses at issue here, this Court should stay this action pending the conclusion of the arbitration. *See* Motion to Stay at 11 (citing relevant case law).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay this action in favor of arbitration or, in the alternative, pending arbitration in accordance with the parties' negotiated and signed agreement.

Dated: New York, New York
September 5, 2008

                                              DLA PIPER LLP (US)

                                              By: *[signature]*
                                              Cary B. Samowitz
                                              Barbara L. Seniawski
                                              1251 Avenue of the Americas
                                              New York, New York  10020-1104
                                              Tel. (212) 335-4500
                                              Fax. (212) 335-4501
                                              *Attorneys for Defendants*

EAST\42079060.2